## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**T.R.S,**
**Claimant Below, Petitioner**

**vs.)   No. 21-0299** (BOR Appeal No. 2055783)
                          (Claim No. 2019010871)

**ANR, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner T.R.S., by Counsel Reginald D. Henry, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review").[1] ANR, Inc., by Counsel H. Dill Battle III, filed a timely response.

The issues on appeal are medical benefits and temporary total disability benefits. The claims administrator denied authorization of the medications Lisinopril-Hydrochlorothiazide and Xarelto in two separate decisions dated October 9, 2019. On December 11, 2019, the claims administrator denied authorization of compression stockings. The claims administrator denied a request for a psychiatric referral and treatment on December 18, 2019. On February 6, 2020, the claims administrator closed the claim for temporary total disability benefits. The claims administrator denied a referral to a neurologist on February 12, 2020. On April 15, 2020, the claims administrator denied a request for a trial spinal cord stimulator. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decisions in its October 6, 2020, Order. The Order was affirmed by the Board of Review on March 17, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See* Rule 40 of the Rules of Appellate Procedure.

1

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

> (d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

T.R.S., a loader operator, injured his lower back while lifting the back of a four-wheeler at work on November 8, 2018. A treatment note from MedExpress indicates T.R.S. reported back pain and tingling in his legs after injuring his back at work that day. X-rays showed mild degenerative disc disease with no fractures or acute abnormalities. T.R.S. was diagnosed with lumbar sprain and paresthesia and was placed on modified duty until November 14, 2018.

On November 12, 2018, T.R.S. sought treatment from Appalachian Regional Healthcare Emergency Department for low back pain that radiated into his right leg, as well as numbness and tingling in his right hip. A CT scan showed possible muscle spasms in the lower back, spinal cord stenosis from L2-L5, mild neuroforaminal narrowing at L5-S1, and mild degenerative changes at L4-5 and L5-S1. The primary diagnosis was lumbosacral radiculitis. The claim was held compensable for lumbar strain on November 15, 2018.

A November 20, 2018, lumbar MRI showed mild multilevel degenerative disc disease, a small fissure at L4-5, a mild disc bulge at L4, and a mild disc bulge with central protrusion at L5-S1. On December 12, 2018, Robert Crow, M.D., a spinal surgeon, diagnosed low back pain, lumbar disc degeneration, pain radiating into the legs, and lower back strain. Dr. Crow stated that no surgical remedy was required and recommended conservative treatment. He opined that T.R.S. could do all of his regular life and work activities.

In a January 14, 2019, treatment note, Rajesh Patel, M.D., diagnosed lumbar sprain, lumbar facet sprain, L4-5 annular tear, L5-S1 disc protrusion, and bilateral L5 radiculitis. He

2

recommended conservative treatment in the form of injections and bracing. T.R.S. returned on January 28, 2019, and reported that facet injections worsened his pain. Dr. Patel prescribed a Medrol Dosepak and recommended a discography at L4-5 and L5-S1. On February 11, 2019, T.R.S. returned with worsening pain. Physical therapy was not helping his symptoms. Dr. Patel diagnosed lumbar disc protrusions at L4-5 and L5-S1, bilateral L5 radiculitis, lumbago, lumbar sprain, and facet sprain. A lumbar EMG showed active bilateral L5-S1 radiculopathy on February 26, 2019. On March 1, 2019, a lumbar MRI showed a large posterior disc protrusion at L5-S1, which was larger than seen on a previous MRI. T.R.S. returned to Dr. Patel on March 4, 2019, and stated that conservative treatment had provided no pain relief. Dr. Patel noted that an EMG showed active radiculopathy, and an MRI showed an L5-S1 disc herniation with recess narrowing. Dr. Patel opined that surgical intervention was necessary.

Kyle Muscari, D.O., treated T.R.S. for several issues, including anxiety on March 12, 2019. T.R.S. stated that his anxiety stemmed from increased pain and stress due to not being able to work. Dr. Muscari diagnosed lumbosacral radiculopathy, back muscle spasms, and anxiety disorder. He recommended referral to a psychiatrist. On March 15, 2019, the claims administrator authorized Dr. Muscari's request for counseling services.

T.R.S. was treated at Life Strategies Counseling on March 20, 2019, where he reported persistent depressed moods and disinterest in activities. It was noted that T.R.S. injured his back at work in November of 2018 and that his father passed away in January of 2018. It was also noted that T.R.S. reported his father was diagnosed with depression and anxiety in August of 2000. T.R.S. was diagnosed with depressive disorder due to his back injury with major depressive like episodes and generalized anxiety disorder. On March 25, 2019, the claims administrator authorized a psychiatric evaluation with Ahamed Faheem, M.D. T.R.S. returned to Life Strategies Counseling on March 29, 2019, where he reported that he was depressed due to his inability to work and admitted to having suicidal thoughts. Weekly appointments were made and attended.

In an April 17, 2019, treatment note, Nicholas Phan, M.D., noted that T.R.S. reported severe back pain as well as bladder and bowel incontinence for the past two weeks. Dr. Phan diagnosed a history of anxiety and traumatic stress disorder, an L5-S1 herniated disc, and severe lower back pain radiating into both legs. Dr. Phan opined that surgery could alleviate T.R.S.'s leg pain but would not help his lower back pain. Because T.R.S.'s pain was back-dominated, Dr. Phan did not recommend surgery. He stated that surgery would have a high likelihood of causing more back pain.

On May 1, 2019, T.R.S. returned to Life Strategies Counseling and stated that he was in severe pain and had recently been treated at the emergency room for high blood pressure due to pain. T.R.S. saw Dr. Muscari on May 2, 2019, and reported that he had discontinued Duloxetine due to nausea and vomiting. Lexapro provided some relief. Dr. Muscari diagnosed lumbosacral radiculopathy, back muscle spasms, and anxiety disorder.

On May 6, 2019, Dr. Patel noted that T.R.S. reported his pain was getting progressively worse as time progressed. Dr. Patel assessed L5-S1 disc herniation, bilateral L5-S1 radiculopathy, L5 annular tear, and intractable back pain. Dr. Patel agreed with Dr. Phan that he would like to

avoid surgery, however, physical therapy and injections failed. Dr. Patel stated that the only treatment left was lumbar fusion surgery or a spinal cord stimulator. Dr. Patel stated that surgery was a gamble and had a 50% chance of improving T.R.S.'s pain. There was also a possibility that surgery would worsen T.R.S.'s symptoms. T.R.S. decided to proceed with surgery. On May 8, 2019, the claims administrator authorized counseling services from March 12, 2019, through June 7, 2019.

T.R.S. was seen for a scheduled appointment on May 8, 2019, at Life Strategies Counseling. T.R.S. still had severe pain and reported thoughts of self-harm. The claims administrator authorized an L5-S1 lumbar fusion on May 14, 2019. The following day, T.R.S. reported to Life Strategies Counseling that he still had severe pain but surgery for his back was approved. It was noted that he was taking medications for his anxiety and depression, including Lisinopril-Hydrochlorothiazide. The claims administrator authorized the medication Lisinopril-Hydrochlorothiazide on May 29, 2019. On June 4, 2019, the claims administrator authorized counseling services.

On June 20, 2019, the claims administrator again authorized an L5-S1 spinal fusion with authorization dates from May 6, 2019, through July 31, 2019. Knee high compression socks were authorized on July 8, 2019. On July 23, 2019, T.R.S. underwent anterior lumbar spine fusion, and on July 25, 2019, he underwent posterior lumbar spine fusion.

In a July 26, 2019, psychiatric consultation, Jawad Zafar, M.D., noted that T.R.S. was seen for depression and suicidal ideations while he was admitted to Raleigh General Hospital for his lumbar fusion. Dr. Zafar diagnosed recurrent, moderate major depressive disorder, generalized anxiety disorder, and intermittent explosive disorder. Dr. Zafar prescribed Hydroxyzine, Abilify, and Trazadone.

In a July 26, 2019, neurological consultation, Elizabeth Bass, M.D., noted that T.R.S. had a history of bipolar disorder, back pain, headaches, and neuropathy. T.R.S. reported poor sensation in his legs. He was only able to walk a few feet at a time. Dr. Bass assessed generalized weakness but noted that the workup was more consistent with easy fatigability rather than actual neurological weakness.

Quartel Amjad, M.D., stated in an August 1, 2019, treatment note that T.R.S. was transferred to Encompass Health Rehabilitation Hospital. He reported worsening pain and lower extremity weakness. Dr. Quartel noted diminished muscle strength, restless leg syndrome, and neuropathy. He also noted that T.R.S. was on a very high level of narcotics. T.R.S. was discharged from Encompass to Raleigh General Hospital on August 6, 2019, where he was admitted for observation and treatment. A bilateral lower extremity venous ultrasound was performed on August 7, 2019, by Paul Ratcliff, D.O. Dr. Ratcliff found a non-occlusive thrombus in the right popliteal vein. It appeared to be chronic in nature. A lumbar MRI was also performed that day and showed a prior L5-S1 fusion with no evidence of high grade canal stenosis. Mild canal stenosis was noted at L4-5. In a treatment note, Dr. Bass stated that T.R.S.'s leg would not quit shaking. Dr. Bass found that the shaking was the result of muscle spasms. T.R.S. had hyperflexia, which was likely coming from somewhere in the thoracic spine. A lumbar MRI was performed on August

4

8, 2019, and showed internal fixation at L5-S1 and bilateral neuroforaminal narrowing at L3-4 and L4-5. A thoracic MRI showed no abnormal findings.

In an August 11, 2019 treatment note, Yingxue Zhang, M.D., with Encompass Health Rehabilitation Hospital, diagnosed anxiety, chronic pain syndrome, deep vein thrombosis of the right leg, hypertension, and psychosomatic disorder. Dr. Zhang recommended one to two weeks of inpatient treatment due to a need for constant medication management, re-evaluation, and adjustments. On August 12, 2019, Dr. Zhang concluded that T.R.S. was malingering, likely in an effort to obtain more narcotics. It was noted that T.R.S. was using a wheelchair. T.R.S. was discharged on August 16, 2019. In the discharge note, Dr. Zhang stated that T.R.S. had postoperative uncontrolled anxiety. On examination, he had significant clinical inconsistency in physical performance. It was noted that T.R.S. was discharged to an inpatient rehabilitation hospital, where his anxiety steadily decreased over time. Dr. Zhang stated that an accurate neurological assessment was impossible to obtain due to T.R.S.'s lack of full cooperation. T.R.S. was eventually discharged home with the diagnoses of anxiety, chronic pain syndrome, deep vein thrombosis of the right leg, and psychosomatic disorder.

Dr. Patel treated T.R.S. for severe pain on August 21, 2019, and diagnosed lumbar post-fusion syndrome at L5-S1 and stenosis. Dr. Patel stated that the stenosis could be causing T.R.S.'s symptoms and that a decompression may help him walk again. Stenosis was the only explanation Dr. Patel could find for T.R.S.'s inability to walk properly. Dr. Patel recommended a microscopic laminectomy.

In an August 26, 2019, Physician Review, Rebecca Thaxton, M.D., recommended denial of the medication Xarelto because the medication was used to treat blood clots. She found no relation between T.R.S.'s deep vein thrombosis and the compensable injury and noted that T.R.S. has several risk factors for clots. Dr. Patel performed a microscopic laminectomy on August 27, 2019.

In an August 28, 2019, psychiatric consultation, Dr. Zafar noted that T.R.S. reported he was not taking any of his medications. T.R.S. denied suicidal ideations. The staff at the hospital noted that T.R.S. reported tremors in his right leg, but there were irregularities in the presenting symptoms and T.R.S.'s assertion. Dr. Zafar found inconsistencies during his examination. Dr. Zafar diagnosed facetious disorder, generalized anxiety, intermittent explosive disorder, and concern for malingering.

Pascal Atanga, M.D., stated in an August 28, 2019, treatment note, that T.R.S.'s complex history of lower back pain was bewildering. Dr. Atanga reviewed a lumbar MRI and found no acute changes since previously imaging. His neurological examination was significant for several adventitious movements, specifically varying degrees of muscle spasms that switched from left to right. Dr. Atanga concluded that T.R.S.'s presentation was largely psychiatric in nature and did not fit with any neurological syndrome. He advised a referral to psychiatry.

A cervical MRI was performed on August 29, 2019, and was unremarkable. A VAS duplex venous test, also performed that day, was negative for thrombosis. An August 31, 2019, lumbar

MRI showed extensive postoperative changes at L4-5, a mild mass effect on the thecal sac at L4-5, and mild multilevel degenerative changes below L4.

On September 11, 2019, T.R.S. returned to Dr. Patel. He was taking Norco and doing physical therapy, but nothing was relieving his pain. Dr. Patel diagnosed lumbar post fusion syndrome at L5-S1, lumbar post laminectomy syndrome at L4-5, shaking right lower extremity, and lumbar sprain. Dr. Patel could not explain the right lower extremity shaking. On September 12, 2019, the claims administrator authorized a psychiatric referral to Dr. Faheem. An email was sent by the claims administrator on Septemebr 16, 2019, which stated that the compensable diagnoses were lumbar sprain and lumbar spine fusion.

In a Septemebr 16, 2019, treatment note, Dr. Muscari diagnosed lumbosacral radiculopathy, back muscle spasms, anxiety, and chronic deep vein thrombosis. He noted that T.R.S.'s case was very difficult due to potential psychological components and the large number of medical records due to multiple hospital stays.

T.R.S. saw Bryan Whyte, M.D., at Vein Health Solutions on September 18, 2019. Dr. Whyte diagnosed acute embolism and thrombosis of the right femoral vein, lumbar intervertebral disc degeneration, and hypertension. He recommended a repeat venous ultrasound of the right leg. T.R.S. was to continue taking Xarelto. On September 19, 2019, Glen Goldfarb, M.D., performed an EMG of T.R.S.'s right leg. He found right L5 radiculopathy with denervation changes in the right anterior and posterior tibialis muscles. Elizabeth Vines, BS, RVT, RDMS, performed a venous ultrasound on September 26, 2019, in which she found no thrombus in the left or right deep venous system.

In an October 2, 2019, treatment note, Dr. Patel stated that based on the EMG, he was waiting for a second opinion evaluation. He noted that T.R.S. could have some nerve irritation which could be treated with spinal cord stimulation. He referred T.R.S. to a pain clinic for epidural steroid injections and a possible spinal cord stimulator. The claims administrator denied a request for authorization of Lisinopril-Hydrochlorothiazide on October 9, 2019. In a separate decision that day, it also denied authorization for Xarelto. On October 14, 2019, Dr. Whyte stated that T.R.S.'s ultrasound results showed no deep vein thrombosis but did show reflux in both legs. Compression stockings were recommended.

Dr. Faheem performed a psychiatric evaluation of T.R.S. on October 14, 2019. At that time, T.R.S. denied any psychiatric issues prior to the compensable injury. Dr. Faheem found that T.R.S. was prone to dramatization. He diagnosed adjustment disorder with depressed mood, rule out factitious disorder, and symptom exaggeration. He found no convincing evidence to support a diagnosis of post-traumatic stress disorder. Dr. Faheem recommended no further psychiatric outpatient treatment because T.R.S. already had counseling and had received antidepressant medication. He stated that T.R.S. had symptom exaggeration and a lack of motivation to improve and opined that T.R.S.'s anxiety and depression were mostly due to the adjustment disorder.

T.R.S. underwent a second opinion at WVU Department of Neurosurgery on October 16, 2019, where he reported that he had not been able to walk and had no feeling in his right leg since

his last surgery. Nothing alleviated his symptoms. The assessment was post lumbar surgery, chronic radular lumbar pain, and paraspinal muscle pain. No further surgeries were recommended. It was opined that T.R.S. had a severe paraspinal muscle strain which would take at least a year to begin to fully heal. A spinal cord stimulator was recommended for pain management. On October 23, 2019, Dr. Patel recommended referral to a pain clinic for a trial spinal cord stimulator. Dr. Muscari continued to diagnose unspecified anxiety disorder and requested a psychiatric referral on October 28, 2019.

In an October 31, 2019, Physician Review, Dr. Thaxton recommended against authorization for compression stockings for T.R.S.'s venous deficiency. She stated that neither deep vein thrombosis nor venous insufficiency were compensable conditions in the claim. In a November 6, 2019, Physician Review, Randall Short D.O., recommended against authorization of a psychiatric referral. He stated that T.R.S. already underwent evaluation by Dr. Faheem and did not require another.

T.R.S. returned to Dr. Patel on November 25, 2019, and was diagnosed with L5-S1 lumbar post fusion syndrome, L4-5 post laminectomy syndrome, right lower extremity muscle spasms, ulnar neuropathy, cervical sprain, and thoracic sprain. Dr. Patel stated that he could not explain T.R.S.'s muscle spasms and recommended referral for a neurological consultation and pain management. The claims administrator denied a request for authorization of compression stockings for venous insufficiency on December 11, 2019.

In a December 12, 2019, Independent Medical Evaluation, Marsha Bailey, M.D., reviewed T.R.S.'s records and performed a physical examination. She concluded that T.R.S. suffers from chronic low back pain as a result of the compensable injury. She believed there was no medical evidence to support his complaints of being unable to bear weight or walk. Dr. Bailey opined that T.R.S.'s differential diagnosis should include symptoms magnification, somatic symptom disorder, conversion disorder, and malingering. Dr. Bailey asserted that the overwhelming medical evidence does not support T.R.S.'s assertion that he has lower extremity shaking, pain, numbness, tingling, or the inability to bear weight. Dr. Bailey found that T.R.S. had reached maximum medical improvement and opined that he could return to work with a few permanent restrictions for lifting and bending due to his spinal surgeries. She recommended no additional treatment and assessed 20% whole person impairment.

The claims administrator denied a request for a psychiatric referral and treatment on December 18, 2019. On January 6, 2020, T.R.S. was granted a 20% permanent partial disability award. In a January 10, 2020, Physician Review, Syam Stoll, M.D., opined that a referral for a neurological consultation should be denied. He noted that Dr. Bailey found T.R.S. had reached maximum medical improvement and required no additional treatment.

On January 20, 2019, T.R.S. was seen by Timothy Deer, M.D., who diagnosed lumbar sprain, lumbar post laminectomy syndrome, lumbar radiculopathy, and chronic pain syndrome. Dr. Deer stated that T.R.S.'s options included a trial spinal cord stimulator. The claims administrator closed the claim for temporary total disability benefits on February 6, 2020. On February 12, 2020, the claims administrator denied a request for a referral to a neurologist. T.R.S.

returned to Dr. Whyte on February 10, 2020, and reported swelling in his legs. Dr. Whyte stated that T.R.S.'s symptoms were the result of his spinal problems.

In a March 12, 2020, Physician Review, Dr. Thaxton recommended against authorization of a spinal cord stimulator. She stated that Dr. Faheem had not cleared T.R.S. for a spinal cord stimulator. In fact, he diagnosed symptoms exaggeration and possible factitious disorder, which are contraindications for an implanted device such as a spinal cord stimulator.

Dr. Patel authored a letter on March 23, 2020, stating that T.R.S. failed conservative treatment for his back injury and was offered surgical intervention. T.R.S. had made little progress, so he recommended a neurological consultation to assess the right lower extremity shaking. Dr. Patel acknowledged that T.R.S. has symptoms that do not match his imaging findings and that such symptoms could not be well explained. Dr. Patel stated that he considered T.R.S. to be temporarily and totally disabled but that such disability was the result of multiple factors.

The claims administrator denied a request for a trial spinal cord stimulator on April 14, 2020. On May 18, 2020, in a physician review, Dr. Stoll recommended against authorization of bilateral medial branch nerve blocks, radiofrequency ablation, and the continued use of hydroxyzine. He found that such treatment was not necessary for a compensable diagnosis in the claim.

In its October 6, 2020, Order, the Office of Judges affirmed the claims administrator's decisions denying a request for authorization of Lisinopril-Hydrochlorothiazide, denying authorization of Xarelto, denying a request for authorization of compression stockings for venous insufficiency, denying a request for a psychiatric referral and treatment, closing the claim for temporary total disability benefits, denying a request for a referral to a neurologist, and denying a request for a trial spinal cord stimulator. The Office of Judges began by noting usual case management by the claims administrator. The claim was held compensable for lumbar sprain/strain. No requests were made for additional diagnoses, and no orders were presented indicating other diagnoses were added to the claim. However, in a September 16, 2019, email, a representative stated that the compensable diagnoses in the claim were lumbar sprain and lumbar spine fusion. The lumbar fusion was authorized on June 20, 2019. The Office of Judges found that lumbar spine fusion is a treatment rather than a diagnosis. It further found that prior authorization for such a surgery for a diagnosis of lumbar sprain does not conform with the guidelines set forth in West Virginia Code of State Rules § 85-20. Also, the surgery was authorized despite the opinions of two neurosurgeons recommending against surgical intervention.

The Office of Judges also took issue with the authorization of Lisinopril-Hydrochlorothiazide and compression socks, both of which are for the treatment of deep vein thrombosis, a condition that has never been added to the claim. The Office of Judges found that prior to the adoption of West Virginia Code of State Rules § 85-20, it was generally accepted that if a claims administrator authorized treatment for a specific condition, that condition essentially became part of the claim. West Virginia Code of State Rules § 85-20-21 provides that preexisting conditions that prevent recovery may be treated; however, such conditions that do not prevent recovery from the compensable injury will not be covered. The Office of Judges concluded that

8

despite previously authorizing treatment for deep vein thrombosis, such authorization should be construed as clerical error and does not oblige the claims administrator to cover further treatment for the noncompensable diagnosis. The Office of Judges therefore affirmed the claims administrator's denial of authorization of Lisinopril-Hydrochlorothiazide, Xarelto, and compression stockings.

The Office of Judges next addressed the referral for psychiatric treatment. It found that T.R.S. was seen by Dr. Faheem and Dr. Zafar, both of whom found evidence of symptom magnification and malingering. Dr. Faheem concluded that T.R.S. would not benefit from further psychiatric treatment due to a lack of motivation to improve and symptom exaggeration. The Office of Judges concluded that the evidence shows T.R.S. has not benefitted from the already approved psychiatric treatment and would not benefit from further treatment.

Lastly, the Office of Judges addressed the referral to a neurologist, trial spinal cord stimulator, and closure of the claim for temporary total disability benefits. It found that Dr. Patel exhausted all possible treatment for T.R.S. and has no further idea what could explain the alleged symptoms. Though he suggested a referral to a neurologist, there is no evidence that such evaluation would be helpful, especially considering T.R.S. has already had a neurological consultation. Regarding the spinal cord stimulator, the Office of Judges concluded that the psychiatric predicate has not been met pursuant to West Virginia Code of State Rules § 85-20 guidelines. The Office of Judges held that Dr. Bailey's opinion that T.R.S. has reached maximum medical improvement and requires no further treatment is reliable. Because T.R.S. has reached maximum medical improvement, the suspension of temporary total disability benefits was affirmed. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on March 17, 2021.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The majority of T.R.S.'s requests are for medical treatment. West Virginia Code § 23-4-3(a)(1) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. A preponderance of the evidence fails to show that the requested medical treatment in the form of Lisinopril-Hydrochlorothiazide, Xarelto, compression stockings, a psychiatric referral and treatment, a referral to a neurologist, and a spinal cord stimulator are necessary treatment for a compensable injury in the claim. Pursuant to West Virginia Code § 23-4-7a, temporary total disability benefits will cease when the claimant has reached maximum medical improvement, has been released to return to work, or has returned to work, whichever occurs first. Dr. Bailey found that T.R.S. reached maximum medical improvement for his compensable conditions. Therefore, temporary total disability benefits were properly suspended.

Affirmed.

**ISSUED: January 19, 2023**


**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn